DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, Brian Soltis ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which overruled his objections to the magistrate's decision and adopted various orders regarding spousal support, child support, and the payment of various expenses for his children. This Court vacates.
 I {¶ 2} Erin Soltis ("Mother") and Father married on August 24, 1985 and divorced in California on January 21, 2003. During their marriage, the parties had three children. The parties' divorce decree granted Father and Mother joint custody of the children, but deemed Mother to be the primary custodial parent. The divorce decree also set forth the parties' visitation rights, child support obligations, and spousal support obligations. Because the parties had relocated to Ohio by the time the decree issued, the decree provided that:
 "[Ohio's] courts will have jurisdiction, and will be the only convenient forum, to make any modification orders providing for the custody, including visitation *Page 2 
rights, of any child of the parties for as long as either party continues to be a resident of Ohio. *** Either party may register the Judgment of Dissolution of Marriage with the Ohio Courts for the purpose of enforcement and any subsequent modification actions."
The decree specifically provided, however, that California would retain jurisdiction over spousal support issues.
 {¶ 3} On September 28, 2005, Father filed the following items in the Summit County Court of Common Pleas, Domestic Relations Division: (1) a petition for action on a foreign judgment, asking the court to take action on the parties' California divorce decree; (2) a motion for a reallocation of parental rights; (3) a motion for modification of child support; and (4) a motion for modification of the children's expenses, such as out-of-pocket medical and dental expenses. On October 30, 2006, the magistrate issued a decision in which she: (1) determined that Ohio has "continuing exclusive jurisdiction over child support"; (2) suspended Father's child support obligation with regard to the parties' eldest son as of March 15, 2006; and (3) recalculated the parties' child support obligations based on their changes in income. In her decision, the magistrate noted that "[s]pousal support is currently being litigated in California courts." The trial court adopted the magistrate's decision the same day that it was issued.
 {¶ 4} On November 13, 2006, Mother filed objections to the magistrate's decision, arguing that the magistrate erred by reducing Father's child support obligation and ordering her to share in many of the children's expenses. Husband responded in opposition, and Mother replied. On June 26, 2007, the trial court issued a ruling on Mother's objections. The trial court overruled Mother's objections, but modified the magistrate's child support calculations so as to include the spousal support Mother receives as income.
 {¶ 5} Subsequently, the parties filed various motions. On July 28, 2007, Mother filed a motion for contempt, which alleged that Father had failed to pay child and spousal support as *Page 3 
ordered and to pay additional child and spousal support for bonuses that he received in 2006 and 2007. On July 18, 2007, Father filed a motion for reallocation of parental rights and a modification of child support. On September 7, 2007, Mother filed a motion to modify child support, the children's "extraordinary expenses," and the children's out-of-pocket medical and dental expenses. On March 10, 2008, the magistrate issued her decision. The magistrate ordered that: (1) Father owed Mother $9,487.50, which represented 23% of the bonus payments that he received in 2006 and 2007; (2) Father owed Mother a $7,800 credit for child support that Mother returned to Father based on his payment of child support for the parties' eldest child during the time that the child began residing with Father; (3) the money that Father owed to Mother could be deducted from the Child Support Enforcement Agency ("CSEA") account, which Father had overpaid by $22,524.96; (4) Father pay $500 per month more than the amount specified in the child support guidelines; (5) the children's out-of-pocket medical expenses be paid on a percentage basis of the parties' income; and (6) the parties equally share in the payment of their middle son's tuition and related expenses. The trial court adopted the magistrate's decision the same day that it was issued.
 {¶ 6} On March 24, 2008, both Father and Mother filed objections to the magistrate's decision. On July 25, 2008, the trial court held a hearing on the parties' objections. On July 31, 2008, the trial court issued its decision overruling all of the parties' objections. Father now appeals from the trial court's decision and raises seven assignments of error for our review. For ease of analysis, we rearrange and consolidate several of the assignments of error.
 II Assignment of Error Number Four "THE TRIAL COURT ERRED IN ADDRESSING MATTERS OTHER THAN THE CHILDREN'S ISSUES." *Page 4 
 Assignment of Error Number Five "THE TRIAL COURT ERRED IN ADDRESSING SPOUSAL SUPPORT ISSUES BETWEEN THE PARTIES WHEN SUCH MATTERS WERE RAISED IN THE CALIFORNIA COURT."
 Assignment of Error Number Six "THE TRIAL COURT ERRED IN ITS APPLICATION OF CALIFORNIA LAW TO SPOUSAL SUPPORT ISSUES BETWEEN THE PARTIES."
 Assignment of Error Number Seven "THE TRIAL COURT ERRED IN CALCULATING A BONUS DUE FOR SPOUSAL SUPPORT WHEN THE SAME BONUSES HAD BEEN CONSIDERED IN PRIOR CALCULATIONS OF CHILD SUPPORT AND HAD PREVIOUSLY BEEN PAID."
 {¶ 7} In his fourth and fifth assignments of error, Father argues that the trial court erred in considering Mother's motions and arguments regarding spousal support issues. Specifically, Father argues that California continued to have jurisdiction over spousal support issues. In his sixth assignment of error, Father argues that the trial court erred in adopting the magistrate's decision because the decision misapplied California law. Specifically, Father argues that the court's decision erroneously: (1) ordered him to pay additional spousal support when his gross income had not surpassed the threshold amount; (2) ordered him to compensate Mother again for his 2006 and 2007 bonuses despite those bonuses being part of Mother's compensation under California's August 6, 2007 order; and (3) applied the wrong percentage amount to his bonuses. In his seventh assignment of error, Father again argues that the trial court erred in ordering him to pay Mother an additional $9,487.50 for the bonuses he received because he already compensated Mother for those bonuses.
 {¶ 8} R.C. 3115.40 provides, in relevant part, as follows:
 "A registered order issued in another state that is confirmed *** is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state. *** [A] tribunal of this state shall recognize and enforce, but *Page 5 
may not modify, a registered order that has been confirmed if the issuing tribunal had jurisdiction."
A trial court may exercise jurisdiction over a divorce decree or order for the purpose of enforcing, but not altering, the decree or order.Wheeler v. Wheeler, 9th Dist. No. 23538, 2007-Ohio-4418, at ¶ 9. Consequently, before this Court considers Father's substantive arguments with regard to spousal support, we must first determine whether the trial court acted within the confines of its jurisdiction in ordering Father to pay Mother $9,487.50 for his 2006 and 2007 bonuses. Subject matter jurisdiction is a question of law. CommuniCare Health Servs.,Inc. v. Murvine, 9th Dist. No. 23557, 2007-Ohio-4651, at ¶ 13. "[Accordingly, this Court reviews the trial court's assertion of jurisdiction in this matter de novo." Id.
 {¶ 9} The portion of the parties' divorce decree dealing with Father's bonuses provides as follows:
 "In addition, [Father] will pay to [Mother], as and for additional spousal support, a sum equal to the guideline indicator for the gross amount of any bonus, commission, or other income [Father] may receive in addition to his gross monthly compensation of $10,729.00. The guideline indicator shall be set forth in the current version of the DissoMaster (tm) or SupporTax (tm) support calculation software existing at the time the additional income is paid to [Father]. ***"
On December 29, 2005, the Superior Court of California, County of Solano, issued an order with regard to Father's 2004 and 2005 bonuses. That order provided that:
 "The Marital Settlement Agreement and incorporating Judgment shall be interpreted to require that, as and for additional child support and spousal support, [Father] shall pay to [Mother] 12% of the gross amount of any bonus as additional child support, and 23% of the gross amount of any bonus as spousal support, in lieu of the calculations set forth in the Marital Settlement Agreement. The Court FINDS these figures approximate the percentages set forth in the DissoMaster (tm) tables for bonus income for the past three years."
No such order from the Superior Court exists with regard to Father's 2006 and 2007 bonuses. Moreover, the Superior Court's August 6, 2007 order terminating spousal support made no mention of the 2006 and 2007 bonuses. The order only specified that the termination of spousal *Page 6 
support would have no effect upon any arrearages Father owed as a result of receiving bonus income and had not yet paid "under previous orders."
 {¶ 10} The trial court adopted the magistrate's conclusion that Father owed Mother $9,487.50 in spousal support based on the bonuses that he received in 2006 and 2007. In reaching this conclusion, the magistrate reasoned as follows:
 "13. The guideline indicator for calculating said payments shall be as set forth in current version of the DissoMaster or Support Tax support calculation software existing at time income received (See Spousal Support Par. 3.2).
 "14. The current guideline indicator is 23%. See California Court order dated December 29, 2005. ***
 "15. [Father] received bonus of $11,250 in 2006 and $30,000 in 2007 (Feb. 15, 2007). *** Applying the guideline indicator of 23% to $41,250 reflects a payment of bonus interest due [Mother] of $9,487.50."
Accordingly, the trial court and magistrate clearly relied upon the California Superior Court's December 29, 2005 order to reach the foregoing result. The Superior Court's December 29, 2005 order, however, concluded that 23% was the appropriate guideline indicator for Father's 2004 and 2005 bonuses because it was the indicator "set forth in the DissoMaster (tm) tables for bonus income for the past three years" (Emphasis added.) There is nothing in the record to suggest that because the appropriate guideline indicator in 2005 was 23%, that percentage continued to be the appropriate guideline indicator for future years. The parties' divorce decree specified that "[t]he guideline indicator shall be set forth in the current version of the DissoMaster (tm) or SupporTax (tm) support calculation software existing at the time the additional income is paid to [Father]." None of the California Superior Court orders in the record dealt with Father's 2006 and 2007 bonuses, much less specified the appropriate guideline indicator for 2006 and 2007. By using the 23% guideline indicator from 2005 as the 2006 and *Page 7 
2007 guideline indicator, the trial court went beyond enforcing the parties' divorce decree. Wheeler at ¶ 9.
 {¶ 11} The trial court could not have merely enforced the parties' divorce decree from the information in the record because neither the parties' decree, nor any of the California Superior Court's subsequent orders, touched upon Father's 2006 and 2007 bonuses. Without any indication of what the appropriate guideline indicator for 2006 and 2007 might be, the trial court could not know that 23% was "[t]he guideline indicator *** set forth in the current version of the DissoMaster (tm) or SupporTax (tm) support calculation software existing at the time the additional income is paid to [Father]." Accordingly, we must conclude that the trial court did not act within the confines of its jurisdiction in addressing Father's 2006 and 2007 bonuses. Id. Father's fourth and fifth assignments of error are sustained. Father's sixth assignment of error is sustained to the extent that it challenges the trial court's application of California law. Because we conclude that the trial court lacked jurisdiction to address Father's 2006 and 2007 bonuses, we need not address the additional arguments that Father raises with respect to those bonuses.
 Assignment of Error Number One "THE TRIAL COURT ERRED IN DEVIATING UPWARD FROM THE CHILD SUPPORT OBLIGATION AS CALCULATED ON THE WORKSHEET."
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN ITS ASSIGNMENT OF RESPONSIBILITY FOR THE CHILDREN'S UNINSURED HEALTHCARE EXPENSES."
 Assignment of Error Number Three "THE TRIAL COURT ERRED IN ITS CALCULATIONS OF CREDITS AND OFFSETS FROM THE AMOUNT FATHER HAD OVERPAID IN CHILD SUPPORT TO MOTHER."
 {¶ 12} In his first assignment of error, Father argues that the trial court erred by adopting the magistrate's decision to deviate upwards from the child support guidelines in the amount of *Page 8 
an additional $500 per month. In his second assignment of error, Father argues that the trial court erred in adopting the magistrate's decision to reduce Mother's apportioned payment for out-of-pocket medical expenses for the children from 50% to 32%. In his third assignment of error, Father argues that the trial court erred in adopting the magistrate's decision that Father owed Mother $7,800 in credit for child support.
 {¶ 13} The record reflects that the trial court relied upon Father's bonus income to calculate Father's income, to calculate Father's guideline child support payment, to determine the amount of child support that Father owed, and to determine the amount by which Father's CSEA account should be offset. The magistrate's decision, as adopted by the trial court, specified that:
 "35. For calculating guideline child support the Court finds the following shall apply: [Father's] base pay income is $125,000. [Father's] bonus income for 2006 shall be averaged over three years."
Father's bonus income affected both the amount of spousal support and the amount of child support that the trial court ordered him to pay. Because the trial court lacked jurisdiction to consider Father's 2006 and 2007 bonuses, the trial court also could not have assessed any change in child support. As such, the trial court's order must be vacated. In light of this determination, Father's first, second, and third assignments of error are moot.
 III {¶ 14} Father's fourth and fifth assignments of error are sustained, and his sixth assignment of error is sustained to the extent that it challenges the trial court's application of California law. Father's remaining assignments of error are moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is vacated.
Judgment vacated. *Page 9 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
MOORE, P. J. DICKINSON, J. CONCUR. *Page 1